FARRIS v. CABIN CREEK CONSOL. COAL CO.

(Circuit Court of Appeals, Fourth Circuit. February 2, 1915.)

No. 1292.

1. MASTER AND SERVANT ☞97—LIABILITY FOR INJURIES—ACCIDENTAL INJURIES.

Plaintiff was employed to hook and unhook coal cars at a tipple at the foot of a tramroad extending up a steep hillside from the tipple to the opening of the mine. Another parallel tramroad was used for mine supplies, and to take the miners up and down, and was equipped with a flat car hauled by an electric hoist. Plaintiff and another employé were directed to go up on the last-mentioned tramroad to get a barrel of oil which had rolled off the car, and two other employés on the bench at the

head of the tramroads were directed by the mine boss to help them in loading the barrel, and for that purpose they took with them a heavy plank. One of them slipped on a "slick" place, allowing the plank to escape, and to descend towards the car. Plaintiff jumped from the car, but was struck by the plank. There was no claim that the bench along which the employés were carrying the plank was unsafe, or in an improper condition; but it was claimed that a lighter board, which might, perhaps, have answered the purpose, was available. *Held* that, as it did not appear that the plank was unsuitable for the work to be done, or, if it was unsuitable, that the mine boss directed its use, or had any knowledge that it was taken by the employés, a jury finding of negligence would not have been warranted, and a verdict for defendant was properly directed, since the injury was one which resulted from pure accident, or from causes which could not have been reasonably anticipated, unaccompanied by want of ordinary care on the part of the employer.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 163; Dec. Dig. ☜97.]

2. MASTER AND SERVANT ☜97—LIABILITY FOR INJURIES—INJURIES RECEIVED IN WORK OUTSIDE EMPLOYMENT.

As there was evidence only of what plaintiff actually did during the few days, he was at work prior to the accident, and no evidence as to what he was hired to do, and as the unforeseen and extraordinary accident was one just as liable to occur where he had been working as on the incline where he was injured, he could not recover on the theory that he was injured in the performance of a required task outside his contract of employment.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 163; Dec. Dig. ☜97.]

3. EVIDENCE ☜471—FACTS OR CONCLUSIONS.

A question asked a witness as to what effect the plank would have had if it had struck the car was properly excluded, as it called for an opinion which the witness was not competent to express, and which would have been without probative value, especially as its only object was to show that plaintiff was not chargeable with contributory negligence in jumping from the car, while the case was not defended, and could not be defended, on that ground.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2149–2185; Dec. Dig. ☜471.]

In Error to the District Court of the United States for the Southern District of West Virginia, at Charleston; Benjamin F. Keller, Judge.

Action by Dominic Farris against the Cabin Creek Consolidated Coal Company. Judgment for defendant, and plaintiff brings error. Affirmed.

Maynard F. Stiles, of Charleston, W. Va., for plaintiff in error.

George S. Couch, Jr., of Charleston, W. Va. (Brown, Jackson & Knight, of Charleston, W. Va., on the brief), for defendant in error.

Before KNAPP and WOODS, Circuit Judges, and WADDILL, District Judge.

KNAPP, Circuit Judge. This is an action for personal injuries received by the plaintiff in error (plaintiff below) as the result of a singular accident. The defendant operates a coal mine on Cabin creek, Kanawha county, W. Va., the opening of which is on a steep

hillside about 1,000 feet above the creek. Near the creek is a tipple from which a tramroad extends up to the opening of the mine. This tramroad is used for lowering the coal from the mine to the tipple, where it is discharged into cars. The plaintiff, a young Italian, was employed at the tipple to hook and unhook the coal cars as they came down from the mine and were returned, and to keep the tipple in order. About 75 yards up the creek is another tramroad, which begins at a hoisthouse some distance above the creek and runs up the hillside, practically parallel with the other tramroad, to a point on the same bench as the mine. This tramroad is used for mine supplies and to take the miners up and down, and was equipped with an open flat car hauled by wire cable and electric hoist.

On the day of the accident, the plaintiff, who had been at work only a week, and a man by the name of Stover, were directed by the mine boss to go up on this tramroad to get a barrel of oil and take it up to the top of the hill to the mine. It appears that this barrel of oil had rolled off the car, while being taken up the day before, and had lodged on the ground near the tramroad about 25 yards from its top. Two other men, Green and Adams, were sent from the drumhouse, at the head of the other incline, to assist in loading the barrel, and for that purpose took from a stock of car timber at the drumhouse an oak plank, about 12 feet long, 12 inches wide, and 2 inches thick, which they carried on their shoulders some 75 yards around the hillside to the head of the incline in question, intending to take it down on the car to the barrel and then roll the barrel on it up onto the car. Just as they got to the head of this incline, one of the men slipped, and the other being unable to hold the plank, which is said to have weighed about 96 pounds, it escaped from their control and went "tearing down the hill" towards the ascending car, on which the plaintiff and Stover were seated. The car had gone about half way up to the top when the plank began its swift descent down the incline. When the plank fell, one of the men who had been carrying it gave out a warning cry, and the man at the hoisthouse, seeing the plank coming, put on the brake to stop the car. It seems that at or about the same moment the plank was seen by the men on the car, and Stover called to the plaintiff to jump. Both of them jumped when the plank was 30 to 50 feet away, Stover first and the plaintiff immediately afterwards. The plank had been coming down on or between the rails, but presently took a different course, probably because the sudden stopping of the car jerked up the cable, which threw the plank off the track, and kept on its downward flight alongside the tramroad. It happened to hit the plaintiff, either as he was jumping or about the instant he struck the ground, and he was severely injured; one of his legs being so badly broken as to require amputation above the knee.

[1] At the conclusion of the evidence the trial court directed a verdict for the defendant, and the correctness of that ruling is the main question to be determined. It seems quite unnecessary in this opinion to review the familiar principles which have been developed and applied in an endless number of negligence actions. In this case there is no dispute about the material facts and they are easily apprehend-

ed. The plaintiff did not attempt to show that the bench along which Green and Adams were carrying the plank was unsafe, or in any respect in an improper condition. One of the witnesses says that Adams, who was carrying the front end of the plank, "slipped over a little place that was slick," whatever he meant by "slick," and this unforeseen and purely accidental happening, so unlikely to occur that no degree of prudence would have anticipated it, or thought of guarding against it, was the proximate cause of the plaintiff's misfortune. The case, therefore, at once narrows down to the contention, and this appears to be the principal ground relied upon for reversal, that the defendant was negligent, or might have been found so by the jury, because Green and Adams, who were sent by the mine boss to help recover the barrel of oil, without other directions so far as the record discloses, took with them for that work a heavy oak plank, when they had there available, as would presumably have appeared if offered proof had been admitted, a lighter board which might perhaps have answered their purpose.

There is no sustainable basis for this contention. All that appeared about the plank was its material and dimensions, and the fact that two men carried it on their shoulders some 75 yards from the drumhouse to the point where they unfortunately let it fall. But this proof would not warrant the inference that the plank was unsuitable for the work to be done. Indeed, the presumption would seem to be the other way, when account is taken of the weight of this barrel of oil and the place from which it was to be extricated. Moreover, it was not shown that the mine boss directed the use of the plank, or had any knowledge that it was taken by the men sent to get the barrel. The most that can be said about it, if anything, is that they made an error of judgment; but, even if this be assumed, it was a mistake for which the defendant is not liable.

Taking the entire testimony, as we do, in the aspect most favorable to the plaintiff, we think it clear that nothing was shown which permitted an inference of negligence on the part of the defendant. Indeed, we do not perceive any ground upon which Green and Adams, fellow servants of the plaintiff, could be deemed at fault; and, if they were not negligent, the defendant surely cannot be held responsible because they failed to keep the plank from falling down the incline. We have examined all the authorities cited in the brief of plaintiff's counsel, including those referred to in his supplemental memorandum; but none of them goes to the extent of upholding a recovery upon the facts which the plaintiff proved or offered to prove in this case. With the sympathy which his disabled condition naturally excites, we have scrutinized the record with especial care, but are impelled to the conclusion that he failed to make out a case which would warrant a jury in finding the defendant guilty of negligence, and we are therefore of opinion that the verdict in its favor was properly directed. The rule of law which is believed to have controlling application to the facts here presented is stated in 26 Cyc. 1092, as follows:

"For an injury which results from pure accident, or from causes which could not be reasonably anticipated, unaccompanied by want of ordinary care on the part of the master, he is not liable."

In our judgment, the case at bar is such a case, and it must be decided accordingly.

[2] It is argued, however, that the plaintiff was entitled to recover, or to have his case submitted to the jury, because he was injured in the performance of a required task which was outside his contract of employment. But we are clearly of opinion, upon the undisputed facts of record, that this contention cannot be sustained. In the first place the evidence does not show with any definiteness or certainty what the plaintiff was hired to do; it only shows what he actually did during the few days he had been at work before the accident. Under the circumstances of this case, and in the absence of proof to the contrary, we think it cannot be said that the particular service in which he got hurt was not a service which he could be properly called upon to perform. The incline down which the plank happened to fall was a part of the plant which the defendant used in its mining operations, and any incidental service in or about that plant would seem to be fairly within the scope of his employment. But a more conclusive answer to the argument here considered is that the plaintiff was not sent to a place or for a task of any inherent or reasonably anticipated danger. Such an unforeseen and extraordinary accident as the one that happened was just as liable to occur at the tipple, where he had been working, as on the incline, where he lost his limb. In short, the work in which he was sent to assist exposed him to no hazard, which was apparent or probable, and his injury resulted from a pure accident, quite beyond the range of experience or precaution.

[3] There is a minor assignment of error which should, perhaps, receive a word of notice. A witness for the plaintiff was asked this question: "Can you tell what effect it [the plank] would have, if it had struck the car?" The answer was excluded. We think this ruling clearly correct, because the question called for an opinion which the witness was not competent to express, and which, if given, would have been without probative value. Moreover, its only purpose was to show that the plaintiff was not chargeable with contributory negligence because he jumped off the car. But the case was not defended, and could not be defended, on that ground. It was perfectly natural for the plaintiff to attempt to escape by jumping, and the most prudent and careful of men would have been likely to do what he did under the circumstances. The verdict was not directed against him because of any fault on his part, and it is evident that, if not free from contributory negligence as a matter of law, the jury would have been amply justified in finding for him on that issue.

The record discloses no reversible error, and the judgment appealed from will therefore be affirmed.