## NORTHERN PACIFIC RAILWAY COMPANY *v.* STATE OF NORTH DAKOTA EX REL. McCUE, ATTORNEY GENERAL.

### ERROR TO THE SUPREME COURT OF THE STATE OF NORTH DAKOTA.

No. 553.    Argued February 24, 25, 1910.—Decided March 14, 1910.

*Willcox* v. *Consolidated Gas Company*, 212 U. S. 19, followed to effect that where the state court has found the rate fixed by a state commission on a single commodity to be not confiscatory and has refused an injunction, the decree will be affirmed without prejudice to the right of the carrier to reopen the case if, after adequate trial of the rate, it can prove that it is actually confiscatory and amounts to a deprivation of property without due process of law.

17 Nor. Dak. 223, affirmed without prejudice.

THE facts are stated in the opinion.

*Mr. Charles W. Bunn* for plaintiff in error.

*Mr. Andrew W. Miller*, Attorney General of the State of North Dakota and *Mr. Guy C. H. Corliss*, with whom *Mr. T. F. McCue* was on the brief, for defendant in error.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a proceeding by the Attorney General of North Dakota, charging the plaintiff in error with continuous violation of a law fixing rates for the carriage of coal within the State, and asking for an injunction. See Nor. Dak. Laws of 1907, c. 51. The railroad answered that the act was void under Art. I, § 8, of the Constitution, the commerce clause; and also under the Fourteenth Amendment, because the maximum rates fixed by it were inadequate and confiscatory. Evidence was taken

and reported to the Supreme Court, and that court decided that the injunction should issue as prayed.   17 Nor. Dak. 223. The grounds of its decision were that the act referred only to transportation wholly within the State and therefore was not bad under Art. I, § 8, thus removing that question; and that the evidence did not prove that the rates would entail a loss on the carriage of coal, so that it was not necessary to decide whether in that event it would be unconstitutional, if the rail-road made a fair profit on its whole business within the State.

The court did however intimate its opinion that if the rail-road was able to make a fair profit upon its whole business within the State it might be required to carry a particular commodity at cost or possibly below, and it expressed its opinion so strongly that the counsel for the plaintiff in error treats that doctrine as the ground of decision and the state-ment as to the insufficiency of the evidence as made only in the light of it and upon rather technical grounds.   He argues that the evidence was undisputed, that the facts testified to and the fair inferences from them must be taken as proved, and that on those facts and inferences the constitutional ques-tion is raised.   The evidence consisted of tables of rates in other States, computation as to the cost of transportation, and expert opinions, all of which were thought to converge to the conclusion that the statutory rates were unreasonable and less than the cost of carriage.   But laying technical objections on one side and taking the facts as admitted, the argument for the State showed that there are too many elements of uncer-tainty in the calculation for us to say, if we could, as to which we intimate no opinion, that the conclusion is proved, when the Supreme Court of the State says that it is not.

The carriage of coal is a very small part of the railroad's business.   The estimate of the cost is admitted to be uncer-tain, and to depend in part upon arbitrary postulates.   It has to be increased considerably above the average cost for freight in order to make out the plaintiff in error's point.   We are far from saying that the argument for doing so does not seem to

us to have considerable probability on its side. We do not say that experiment may not establish a case in the future that would require a decision upon the question of constitutional law. But we can express no opinion upon it now. The great difficulty in the attempt to measure the reasonableness of charges by reference to the cost of transporting the particular class of freight concerned is well known and often has been remarked. It seems to us that the nearest approach to justice that can be made at this time is to follow the precedent of *Willcox* v. *Consolidated Gas Co.*, 212 U. S. 19, as nearly as may be, and affirm the decree, but without prejudice to the right of the railroad company to reopen the case by appropriate proceedings if, after adequate trial, it thinks it can prove more clearly than at present the confiscatory character of the rates for coal.

*Decree affirmed without prejudice.*

Similar decrees will be entered in Nos. 554 [1] and 555.[2]

---

[1] *Great Northern Railway Company* v. *State of North Dakota ex rel. McCue, Attorney General.* Argued February 24, 25, 1910. *Mr. Charles W. Bunn* for plaintiff in error. *Mr. Andrew W. Miller*, Attorney General of the State of North Dakota, and *Mr. Guy C. H. Corliss*, with whom *Mr. T. F. McCue* was on the brief, for defendant in error.

[2] *Minneapolis, St. Paul & Sault Ste Marie Railway Company* v. *State of North Dakota ex rel. McCue, Attorney General.* Argued March 24, 25, 1910. *Mr. Charles W. Bunn* for plaintiff in error. *Mr. Andrew W. Miller*, Attorney General of the State of North Dakota, and *Mr. Guy C. H. Corliss*, with whom *Mr. T. F. McCue* was on the brief, for defendant in error.