# C. L. MERRICK COMPANY, a Corporation, v. MINNEAPOLIS, ST. PAUL, & SAULT STE. MARIE RAILWAY COMPANY, a Corporation.

(160 N. W. 140.)

**Common carrier — legal rates — excessive charges — action to recover — Federal supreme court — decisions of — prior decisions — res judicata — rates — confiscatory.**

Action to recover from a common carrier a sum alleged to have been unlawfully exacted by it from plaintiff in excess of the legal rate for transporting lignite coal between July 1, 1907, and March 5, 1910. The rate exacted was concededly in excess of the rate prescribed by chap. 51, Laws 1907, but defendant and respondent railway company seek to justify the retention of such excess charge because of the decision of the Federal supreme court in Northern P. R. Co. v. North Dakota, 236 U. S. 585, 59 L. ed. 735, L.R.A.—, —, P.U.R.1915C, 277, 35 Sup. Ct. Rep. 429, Ann. Cas. 1916A, 1, wherein it was adjudged that such statutory rates were confiscatory and void as applied to the facts there considered. But when that case was before this court it upheld such rate statute (see 19 N. D. 45, 25 L.R.A.(N.S.) 1001, 120 N. W. 869), and its decision was affirmed on writ of error (see 216 U. S. 579, 54 L. ed. 624, 30 Sup. Ct. Rep. 423), with the proviso, however, that it should be "without prejudice to the right of the railway company to reopen the case by appropriate proceedings, if, after adequate trial it thinks it can prove more clearly than at present the confiscatory character of the rates for coal."

*Held,* that such prior decisions are as to defendant railway company *res judicata* upon the issue there determined as to the confiscatory or nonconfiscatory character of the rates as applied to the facts there considered, and such decisions are in no way affected by the later decision of the Supreme Court of the United States above cited, which involve only issues arising out of new facts sub-

---

NOTE.—The recovery back of excessive payments to public service corporations is discussed in a note in 18 L.R.A.(N.S.) 124, in which cases holding that overcharges paid to secure the transportation of goods, with interest, can be recovered, will be found.

On right of attorney general, or other representative of state, to maintain action to enforce or prevent the violation of statutory regulations affecting rates, see note in 18 L.R.A.(N.S.) 664.

On legislative power to fix tolls, rates, or prices, see note in 33 L.R.A. 183.

Elements entering into determination of reasonableness of railroad rates prescribed by the state for local traffic are discussed in notes in 15 L.R.A.(N.S.) 108, and 25 L.R.A.(N.S.) 1001.

sequently occurring.   (See 236 U. S. 585, 59 L. ed. 735, L.R.A.—, —, P.U.R. 1915C, 277, 35 Sup. Ct. Rep. 429.)

It is accordingly *held* that the rates exacted by defendant were in excess of the legal rates in force during the period in controversy, and plaintiff is entitled to recover such excess with interest.

Opinion filed November 17, 1916.

Appeal from District Court, Burleigh County, *W. C. Crawford,* J.

From a judgment in defendant's favor, plaintiff appeals.

Reversed and judgment directed for plaintiff.

*Miller, Zuger,* and *Tillotson,* for appellant.

The rate established in the manner prescribed by law is the lawful rate until it is set aside upon further evidence as the result of greater experience in applying it, and if then modified, it can only affect subsequent transactions.   Wilcox v. Consolidated Gas Co. 212 U. S. 19–52, 53 L. ed. 382–400, 48 L.R.A.(N.S.) 1134, 29 Sup. Ct. Rep. 192, 15 Ann. Cas. 1034.

A rate fixed by the legislature shall remain in effect until a decision by the court.   Reagan v. Farmers' Loan & T. Co. 154 U. S. 360, 38 L. ed. 1014, 4 Inters. Com. Rep. 560, 14 Sup. Ct. Rep. 1047; Stone v. Farmers' Loan & T. Co. 116 U. S. 307, 29 L. ed. 636, 6 Sup. Ct. Rep. 334, 388, 1191; N. D. Const. § 142.

*John L. Erdall, John E. Greene, G. F. Dullam,* and *William G. Porter (A. H. Bright,* of counsel), for respondent.

The plaintiff in the Merrick Case was a citizen and resident of the state of North Dakota when the state case was commenced.   The latter was brought on behalf of all of the citizens of North Dakota, and all citizens of the state are bound by the final judgment entered therein. State ex rel. Davis v. Willis, 19 N. D. 225, 124 N. W. 706.

These points once litigated, the public interest requires that it should be at rest.   Ashton v. Rochester, 133 N. Y. 187, 28 Am. St. Rep. 619, 30 N. E. 965, 31 N. E. 334.

When a judgment is rendered by a competent court awarding a writ of mandamus against a board of supervisors or other body or officer having power to audit claims against a county or other municipality, commanding them or him to audit a claim or demand against the county or municipality, and it is audited in obedience to such command, the

validity of the claim cannot be questioned subsequently by the taxpayers in any collateral action or proceeding. McConkie v. Remley, 119 Iowa, 512, 93 N. W. 505; Fulton v. Pomeroy, 111 Wis. 663, 87 N. W. 831; People ex rel. Chilcoat v. Harrison, 253 Ill. 625, 97 N. E. 1092, Ann. Cas. 1913A, 539.

Where a proceeding is filed by the state's attorney in the name of the people on the relation of certain citizens and electors representing the general public, all individuals constituting the public are regarded as represented and will be bound by the decree or judgment rendered. McEntire v. Williamson, 63 Kan. 275, 65 Pac. 244; State ex rel. Howard v. Hartford Street R. Co. 76 Conn. 174, 56 Atl. 506; Bank of Kentucky v. Stone, 88 Fed. 383; Bear v. Brunswick County, 122 N. C. 434, 65 Am. St. Rep. 711, 29 S. E. 719; Stone v. Winn, 165 Ky. 9, 176 S. W. 933; State ex rel. Blair v. Center Creek Min. Co. 262 Mo. 490, 171 S. W. 356; Kansas City Exposition Driving Park v. Kansas City, 174 Mo. 425, 74 S. W. 979; Orcutt v. McGinley, 96 Neb. 619, 148 N. W. 586; Worrell v. Landis, 42 Okla. 464, 141 Pac. 962; Hovey v. Shepherd, 105 Tex. 237, 147 S. W. 224; Central Bank & T. Corp. v. State, 139 Ga. 54, 76 S. E. 587; State ex rel. Forgues v. Superior Ct. 70 Wash. 670, 127 Pac. 313; Greenberg v. Chicago, 256 Ill. 213, 49 L.R.A.(N.S.) 108, 99 N. E. 1039; People ex rel. Graff v. Chicago, B. & Q. R. Co. 247 Ill. 340, 93 N. E. 422; People ex rel. Atty. Gen. v. Detroit, G. H. & M. R. Co. 157 Mich. 144, 121 N. W. 814; Meza v. Pfister Co. 54 Wash. 7, 102 Pac. 871; Lee v. Independent School Dist. 149 Iowa, 345, 37 L.R.A.(N.S.) 383, 128 N. W. 533; Pierce v. Pierce, 139 Mo. App. 416, 122 S. W. 1147; Leet v. Gratz, 137 Mo. App. 208, 117 S. W. 642; Davis v. Davis, 24 S. D. 474, 124 N. W. 715; Spokane Valley Land & Water Co. v. Jones, 53 Wash. 37, 101 Pac. 515; Freeman, Judgm. 4th ed. § 178; Black, Judgm. § 584; 23 Cyc. 1269.

To entitle a judgment to be pleaded as *res judicata* it must be a final judgment, covering the same issues. Willcox v. Consolidated Gas Co. 212 U. S. 19, 53 L. ed. 382, 48 L.R.A.(N.S.) 1134, 29 Sup. Ct. Rep. 192, 15 Ann. Cas. 1034; 23 Cyc. 1128; Bostwick v. Brinkerhoff, 106 U. S. 3, 27 L. ed. 73, 1 Sup. Ct. Rep. 15; Kingman & Co. v. Western Mfg. Co. 170 U. S. 675, 42 L. ed. 1192, 18 Sup. Ct. Rep. 786; Dusing v. Nelson, 7 Colo. 184, 2 Pac. 923; Lamprey v. Pipe, 28 Fed. 30; Macfarland v. Byrnes, 187 U. S. 246, 47 L. ed. 162, 23 Sup. Ct. Rep.

107; Clark v. Kansas City, 172 U. S. 334, 43 L. ed. 467, 19 Sup. Ct. Rep. 207; Hasletine v. Central Nat. Bank, 183 U. S. 130, 46 L. ed. 117, 22 Sup. Ct. Rep. 49; McCurdy v. Middleton, 90 Ala. 99, 7 So. 655; Roemer v. Neumann, 26 Fed. 332; Australian Knitting Co. v. Gormly, 138 Fed. 92; Union & Planters' Bank v. Memphis, 107 Tenn. 66, 64 S. W. 13; Harrow v. Johnson, 3 Met. (Ky.) 578; Wolfe v. Potts, — Tenn. —, 42 S. W. 189; People ex rel. Johnson v. Miller, 195 Ill. 621, 63 N. E. 504; Johnson v. Hesser, 61 Neb. 631, 85 N. W. 894; Minor v. New Orleans, 115 La. 301, 38 So. 999.

"The general rule is that a judgment is conclusive, for the purposes of a second action between the same parties or their privies, of all facts, questions, or claims which were directly in issue and adjudicated, whether the second suit be upon the same or a different cause of action." 23 Cyc. 1302.

The rule is that the estoppel extends to every material allegation or statement which, having been made on one side and denied on the other, was at issue in the cause, where the judgment was rendered upon the merits, whether on demurrer, agreed statement, or verdict. Aurora v. West, 7 Wall. 82, 19 L. ed. 42; New Orleans v. Citizens' Bank, 167 U. S. 371, 42 L. ed. 202, 17 Sup. Ct. Rep. 905.

The estoppel extends to every material allegation or statement which, having been made on one side and denied on the other, was an issue in the cause, and was determined therein. Aurora v. West, 7 Wall. 102, 19 L. ed. 49; Van Pelt v. McGraw, 4 N. Y. 113; Bryan v. Atchison, 2 La. Ann. 462; Scuddy v. Shaffer, 14 La. Ann. 576; Plicque v. Perret, 19 La. 318; Gilman v. Horseley, 5 Mart. N. S. 664; Dufour v. Camfranc, 11 Mart. 607, 13 Am. Dec. 360; Patterson v. Bonner, 14 La. 233; Martin v. Martin, 5 Mart. N. S. 170; Manhattan Trust Co. v. Trust Co. of N. A. 46 C. C. A. 322, 107 Fed. 328; Iowa County v. Mineral Point R. Co. 24 Wis. 118; Lamb v. Wahlenmaier, 144 Cal. 91, 103 Am. St. Rep. 66, 77 Pac. 766; Litch v. Clinch, 136 Ill. 410, 26 N. E. 580; Casler v. Shipman, 35 N. Y. 545; Roarty v. McDermott, 146 N. Y. 302, 41 N. E. 30; Hermann v. Allen, 103 Tex. 382, 128 S. W. 116; Thornton v. Berry, 101 Ga. 608, 29 S. E. 24; Franklin County v. German Sav. Bank, 142 U. S. 93, 99, 35 L. ed. 948, 950, 12 Sup. Ct. Rep. 147; 23 Cyc. 1300–1302; Southern P. Co. v. United States, 168 U. S. 48, 42 L. ed. 376, 18 Sup. Ct. Rep. 18; Stone v. Winn, 165 Ky. 9, 176 S.

W. 939; Cromwell v. Sac County, 94 U. S. 351, 24 L. ed. 195; State ex·rel. Blair v. Center Creek Min. Co. 262 Mo. 490, 171 S. W. 358; Kansas City Exposition Driving Park v. Kansas City, 174 Mo. 429, 74 S. W. 979; Greenberg v. Chicago, 256 Ill. 213, 49 L.R.A.(N.S.) 108, 99 N. E. 1041.

The prohibition of the Constitution was doubtless intended simply to prevent a common carrier from applying a different rate than that fixed by the legislature pending litigation. It was not the intention to prevent an adjustment between the carrier and the shipper after the litigation should be ended in accordance with the final judgment entered. This construction is in accord with the law as it is generally understood and administered, and avoids any conflict with the Federal Constitution. N. D. Const. § 142; Reagan v. Farmers' Loan & T. Co. 154 U. S. 362, 38 L. ed. 1014, 4 Inters. Com. Rep. 560, 14 Sup. Ct. Rep. 1047; Solum v. Northern P. R. Co. — Minn. —, 157 N. W. 996; Smyth v. Ames, 169 U. S. 466, 42 L. ed. 819, 18 Sup. Ct. Rep. 418; Neal v. Delaware, 103 U. S. 370, 26 L. ed. 567; Scott v. McNeal, 154 U. S. 34, 38 L. ed. 896, 14 Sup. Ct. Rep. 1108; Huntington v. Attrill, 146 U. S. 657, 683, 684, 36 L. ed. 1123, 1133, 1134, 13 Sup. Ct. Rep. 224; Mobile & O. R. Co. v. Tennessee, 153 U. S. 486, 492–495, 38 L. ed. 793, 795, 796, 14 Sup. Ct. Rep. 968.

Fisk, Ch. J. Plaintiff seeks to recover a sum alleged to have been wrongfully exacted from it in excess of the legal rate for hauling lignite coal between July 1, 1907, and March 5, 1910.

Defendant had judgment in the lower court and plaintiff appeals. The facts are not in dispute, and, as found by the trial court, are as follows, omitting the first two findings relating to the corporate capacity of the parties:

(3) That between the first day of July, 1907, and the first day of March, 1910, the defendant received and transported for the plaintiff a considerable number of carloads of coal within the state of North Dakota; that the defendant charged and collected therefor the rates duly prescribed by its tariffs, which rates so charged and collected exceeded in the aggregate the rates prescribed by chap. 51 of the Laws of North Dakota for the year 1907, by the sum of three hundred thirty-two and 8/100 dollars ($332.08).

(4) That the defendant refused to deliver said coal or any part thereof unless the plaintiff would pay said tariff rates, and plaintiff paid the same under protest.

(5) That before the commencement of this action plaintiff demanded of defendant that it refund to the plaintiff all rates charged and collected on such coal shipments in excess of the rates prescribed by said chap. 51, but defendant refused to repay the same or any part thereof.

(6) That on or about the 7th day of August, 1907, the attorney general of North Dakota, on behalf of and in the name of the state of North Dakota, commenced an action in the supreme court of that state against the defendant. In his petition the attorney general pleaded in substance that chap. 51, of the Laws of 1907, had been duly enacted, and that it was and had been in force ever since the first day of July, 1907; that defendant refused to comply with it and was charging rates in excess of the rates prescribed by it; that the defendant was violating said law, and threatened to continue to violate the same; that the entire people and all citizens of the state were vitally interested in the rates charged for the transportation of coal. The petition prayed for an injunction enjoining the defendant from violating said law.

The defendant made answer to this petition and pleaded, among other things, that said chapter 51 was void for the reason that it violated the 14th Amendment to the Federal Constitution.

(7) That on the 22d day of May, 1909, after a hearing was duly had in said action, the supreme court of the state of North Dakota made and entered its judgment in favor of the state and against the defendant, wherein it was ordered and adjudged, among other things, as follows: "That said act, to-wit, chap. 51 of the Laws of 1907, is valid and constitutional; that the petitioner is entitled to the relief asked, and further that a writ issue herein requiring the defendant to put in force the rates prescribed by said act."

(8) That on the application of the defendant a writ of error was duly issued out of the Supreme Court of the United States to review the judgment of the state court last referred to. The decision of the United States Supreme Court was filed on March 14, 1910, Northern P. R. Co. v. North Dakota, 216 U. S. 579, 54 L. ed. 624, 30 Sup. Ct. Rep. 423. The mandate of the United States Supreme Court to the state court, among other things, provided as follows: "It is now hereby ordered and

adjudged by this court that the judgment of the state supreme court in this cause be, and the same hereby is, affirmed with costs, but without prejudice to the right of the railway company to reopen the case by appropriate proceedings, if, after adequate trial, it thinks it can prove more clearly than at present the confiscatory character of the rates for coal."

(9) That on the 13th day of September, 1910, pursuant to the mandate of the Supreme Court of the United States the state supreme court entered a judgment in said action which, among other things, provided as follows: "It is hereby ordered and adjudged that the judgment heretofore rendered and entered by this court be and the same is hereby affirmed, but with the modification that such affirmance is without prejudice to the right of the railway company to reopen the case by appropriate proceedings, if, after adequate trial, it thinks it can prove more clearly than at present the confiscatory character of the rates for coal."

(10)   That on the 3d day of July, 1911, pursuant to said mandate of the United States Supreme Court and said judgment of the state supreme court last referred to, the defendant filed its petition to reopen said case and to take further testimony showing the confiscatory character of the rates for coal.   The supreme court of the state thereupon granted said petition.   Thereafter further testimony was taken, and after having duly considered the same the supreme court of the state made and filed its further opinion embodying findings of fact and conclusions of law which are reported in 26 N. D. 438, 145 N. W. 135. Judgment was entered in accordance with said findings in said state supreme court on the 2d day of February, 1914, adjudging that "the writ of injunction heretofore issued herein requiring and commanding the defendant to put and keep in force the rates prescribed in the act is hereby made permanent and in all things affirmed."

(11) That thereafter upon the application of the defendant a writ was again duly issued out of the Supreme Court of the United States to review the judgment last mentioned.   The decision of the United States Supreme Court was filed on or about the 8th day of March, 1915, and is reported in 236 U. S. 585, 59 L. ed. 735, L.R.A.—, —, P.U.R.1915C, 277, 35 Sup. Ct. Rep. 429, Ann. Cas. 1916A, 1, whereby the judgment of the state supreme court of February 2d, 1914, was reversed; that on the 9th day of April, 1915, the Supreme Court

of the United States issued its mandate to the state supreme court in accordance with the opinion last referred to.

(12) That thereafter, on the 9th day of July, 1915, the supreme court of the state pursuant to the mandate last referred to entered its final judgment in said action between the state and the defendant adjudging and decreeing, among other things:

"1. That the judgment of this court in this cause be and such judgment is hereby reversed and set aside.

"2. That this action be and the same is hereby dismissed.

"3. That the defendant, Minneapolis, St. Paul, & Sault Ste. Marie Railway Company, recover against the plaintiff, the state of North Dakota, its costs herein in the Supreme Court of the United States; to-wit, $42.90, and its costs in this court which are taxed and allowed at $————.''

"It is further adjudged and decreed that the clerk enter this judgment and decree *nunc pro tunc* now as of June 15th, 1915.''

(13) That there was no substantial change in the railroad of the defendant located in the state of North Dakota between the first day of July, 1907, and the first day of July, 1911; that there was no substantial change in the lignite coal mines tributary to the line of the defendant in North Dakota during the time last mentioned. All lignite coal handled intrastate by the defendant during this period came from the same mines. That there was no substantial difference in the cost of handling the intrastate lignite coal traffic on the line of the defendant during this period; that the conditions under which such traffic was handled on the lines of the defendant during this period were substantially the same; the only material difference being that the tonnage gradually increased from eighty-seven thousand two hundred sixteen (87,216) tons in 1907 to two hundred five thousand thirty-eight (205,038) tons for the year ending June 30th, 1911; that the railroad connections between this defendant and other railway companies, so far as it related to the handling of intrastate lignite coal, were the same during this entire period, and such traffic was handled as between the carriers in the same way and under the same conditions.

The assignments of error challenge the correctness of the conclusions of law, which are as follows:

"1. That chap. 51, of the Laws of North Dakota, as applied to the

defendant herein, was from the date of its enactment in conflict with the 14th Amendment to the Federal Constitution, and hence unconstitutional and invalid *ab initio*.

"2. That the action brought in the name and on behalf of the state by the attorney general, referred to in the findings of fact, was brought on behalf of all the citizens of the state; that the proceedings in said suit in the name and on behalf of the state constituted one action in which there was only one final judgment; namely, the judgment entered as of the 5th day of June, 1915; that the proper construction and necessary effect of the judgment last referred to was to finally determine that said chapter 51, as applied to this defendant was unconstitutional from the date of its enactment and that the plaintiff was and is conclusively bound thereby.

"3. That § 142 of the Constitution of North Dakota, if it applies to the present case, is void and inoperative because it is repugnant to and violates said 14th Amendment to the Constitution of the United States.

"4. That judgment be entered herein dismissing the action of the plaintiff and for costs and disbursements in favor of the defendant.

"5. It is therefore ordered that judgment be entered herein in favor of the defendant in accordance with the foregoing findings of fact and conclusions of law."

Appellant contends, in brief, that the decisive question on this appeal is not whether the rates fixed by chap. 51, Laws 1907, were or were not confiscatory during the period covered by this complaint, but, on the contrary, whether the rate exacted by defendant from the plaintiff was in excess of the legal rate at that time. Respondent concedes that if the rates prescribed in chap. 51 were lawful and enforceable as applied to defendant during the time involved, the plaintiff is entitled to recover, otherwise not. It is therefore apparent that the controversy arises out of a difference of opinion as to the legal effect on the rights of these parties of the prior litigation in the case of State ex rel. the Attorney General v. this defendant. Were the rates prescribed by chap. 51, Laws 1907, in the light of such prior litigation, legally enforceable during the time here in question?

As disclosed by the findings in the case at bar, this court on the first hearing in such prior case adjudged such statutory rate reasonable, and not violative of the 14th Amendment to the Federal Constitution, and

ordered its writ to issue, commanding the defendant to put the same in force. (See 19 N. D. 45, 25 L.R.A.(N.S.) 1001, 120 N. W. 869.) Such judgment was on March 14, 1910, in all things affirmed by the Supreme Court of the United States (see 216 U. S. 579, 54 L. ed. 624, 30 Sup. Ct. Rep. 423), but with the following qualification: "But without prejudice to the right of the railroad company to *reopen the case by appropriate proceedings,* if, after adequate trial, it thinks it can prove more clearly than at present the confiscatory character of the rates for coal."

Thereupon, and pursuant to the mandates of this and the Supreme Court of the United States, defendant put into effect the rates prescribed by chap. 51, and continued them in force for the period of over one year, when it applied to this court for leave to reopen the case pursuant to permission thus granted it by the Supreme Court of the United States. The case was accordingly reopened and proof offered tending to show the confiscatory character of such rate during the fiscal year immediately prior to the reopening of such case. Upon such proof this court again adjudged such rate to be reasonable, but, upon writ of error to the court of last resort, it was held that such rates were confiscatory as to the defendant company, and the judgment of this court was reversed. It is now contended by respondent, and the learned trial court, in effect, held, that the plaintiff, by such last decision, is precluded from a recovery upon the alleged ground that the last decision of the United States Supreme Court, in effect, declared chap. 51 unconstitutional and void *from the date of its passage,* and that such last decision reversed and set aside the prior decisions of this court and of the United States Supreme Court.

If this contention is sound, it inevitably follows that both this and the Supreme Court of the United States, by their first mandates, forced defendant to put into effect unlawful and confiscatory rates during the period from March 14, 1910 to March 8, 1915.

We are clear that such contention is unsound. The first decision was final in so far as it put the statute into effect. In other words, it is *res judicata* as to the matters therein determined, and the last decision merely adjudicates that such statutory rates are confiscatory as applied to the facts shown to exist during the period between March 14, 1910, and July 3, 1911.

The fallacy in respondent's contention, as we view it, lies in the unwarranted assumption that the latter judgment relates back and supersedes the first. When respondent applied for and was granted leave to make a new showing as to the confiscatory character of the statutory rates, it amounted in legal effect to the commencement of a new action to determine a new issue; to-wit, whether as applied to and in the light of facts *subsequently arising,* such statutory rates are confiscatory. The case was not reopened for the purpose of relitigating the issues formerly decided, nor was the former decree in any way affected. This is made clear by the recent decision of the Supreme Court in Missouri v. Chicago, B. & Q. R. Co. 241 U. S. 533, 60 L. ed. 1148, 36 Sup. Ct. Rep. 715, wherein that court very lucidly explains the meaning of the words "without prejudice" as used by it to qualify its affirmance of the first decree. We quote: "In a rate case where an assertion of confiscation was not upheld because of the weakness of the facts supporting it, the practice came to be that the decree rejecting the claim and giving effect to the statute was, where it was deemed the situation justified it, qualified as 'without prejudice,' not to leave open the controversy as to the period with which the decree dealt, and which it concluded, but in order not to prejudice rights of property in the future, if, from future operation and changed conditions arising in such future, it resulted that there was confiscation. And the same limitation arising from a solicitude not to unduly restrain in the future the operation of the law came to be applied where the asserted confiscation was held to be established. In other words, the decree enjoining the enforcement of the statute in that case was also qualified as without prejudice to the enforcement of the statute in the future if a change in conditions arose. The doctrine in the first aspect nowhere finds a more lucid statement than the one made on behalf of the court by Mr. Justice Moody in Knoxville v. Knoxville Water Co. 212 U. S. 1, 53 L. ed. 371, 29 Sup. Ct. Rep. 148. It has since been repeatedly applied in language which, in the completest way, makes the meaning of the limitation 'without prejudice' in such a case clear, and leaves no ground for any dispute whatever on the subject. Willcox v. Consolidated Gas Co. 212 U. S. 19, 53 L. ed. 382, 48 L.R.A. (N.S.) 1134, 29 Sup. Ct. Rep. 192, 15 Ann. Cas. 1034; Northern P. R. Co. v. North Dakota, 216 U. S. 579, 54 L. ed. 624, 30 Sup. Ct. Rep. 423; Louisville v. Cumberland Teleph. & Teleg. Co. 225 U. S.

430, 56 L. ed. 1151, 32 Sup. Ct. Rep. 741; Missouri Rate Cases (Knott v. Chicago, B. & Q. R. Co.) 230 U. S. 474, 57 L. ed. 1571, 33 Sup. Ct. Rep. 975; Des Moines Gas Co. v. Des Moines, 238 U. S. 153, 59 L. ed. 1244, P.U.R.1915D, 577, 35 Sup. Ct. Rep. 811. A complete illustration of the operation of the qualification is afforded by the North Dakota case, just cited, since in that case, as a result of the qualification 'without prejudice,' the case was subsequently reopened, and upon a consideration of new conditions arising in such future period, a different result followed from that which had been previously reached. Northern P. R. Co. v. North Dakota, 236 U. S. 585, 59 L. ed. 735, L.R.A. —, —, P.U.R.1915C, 277, 35 Sup. Ct. Rep. 429, Ann. Cas. 1916A, 1. As to the second aspect, that is, the significance of the limitation 'without prejudice' as applied to a decree which enjoined the rates as confiscatory, the meaning of the reservation as we have stated it was in express terms, through an abundance of precaution, defined and stated in the opinion in the Missouri Rate Cases (Knott v. Chicago, B. & Q. R. Co.) 230 U. S. 474, 508, 57 L. ed. 1571, 1594, 33 Sup. Ct. Rep. 975.

"Let us test the merit of the respective contentions by these propositions.

"(a) It is insisted that the right obtains to assert, as against the individual suit of the state, the existence of the confiscation for the very period covered by the previous finding that there was a failure to establish the confiscation, because the reservation 'without prejudice,' which was made in that decree, leaves the whole subject open for a renewed attack as to individuals, and, indeed, by general complaint as to the unconstitutionality of the law as a whole. But this proposition simply disregards the foundation upon which such a reservation came to be applied, as we have just pointed out, in cases involving an assault upon the present and future operation of a law fixing rates. In other words, the contention but accepts the doctrine previously announced, and yet repudiates the cases by which that doctrine was established, by affixing a meaning to the reservation 'without prejudice,' as used in the cases, wholly destructive of the sole object and purpose for which, in those cases, the reservation came to be applied. Again, it is said, conceding that the limitation 'without prejudice,' when applied to a rate case, under the authorities, has the significance which we have

affixed to it, that meaning should only prevent the reopening of the inquiry as to the period embraced by the testimony in the case, and therefore should not be extended so as to prevent the reopening from the time, at least, of the close of the testimony. This, it is said, must be the case, since there might well be a change in conditions between the time when the proof in a case was taken and the entry of the final decree. But this contention again disregards the doctrine upon which, as we have pointed out, the reservation in rate-making cases came to be applied. In other words, it treats the reservation 'without prejudice' as looking backward, and overthrowing that which was concluded by the decree, instead of considering it in its true light, that is, as looking forward to the future, and providing for conditions which might then arise."

The above opinion was handed down since the oral arguments in the case at bar, and respondent has recently filed a supplementary brief in which it attempts to distinguish the case at bar from the above case. We have, however, carefully considered the argument advanced in such supplementary brief, and we are constrained to the view that the Federal supreme court's opinion is in point and decisive of the case at bar.

We cannot, indeed, believe with counsel for the respondent that the eminent Chief Justice, who wrote that opinion and who sought to explain the meaning of the term "without prejudice" as used both in the case before him and the North Dakota case, spoke inadvisedly and without a clear recollection of the facts and the state of the record.

We must, indeed, remember that § 142 of the Constitution of North Dakota provides that "the legislative assembly shall have power to enact laws regulating and controlling the rates of charges . . . ; provided, that appeal may be had to the courts of this state from the rates so fixed; *but the rates fixed by the legislative assembly or board of railroad commissioners shall remain in force pending the decision of the courts.*"

The legislature had spoken and fixed the rates. An appeal was taken to the supreme court of North Dakota, and those rates were approved. On the writ of error to the Supreme Court of the United States, the judgment of the state court was upheld, the constitutionality of the rate statute was not questioned or passed upon, nor was the validity under the Federal Constitution of § 142 of the Constitution of North

Dakota even questioned, and it goes without saying that the supreme court of North Dakota cannot question the validity of its own Constitution. The judgment of the Supreme Court of the United States was, it is true, "without prejudice," but in the meantime the rates fixed by the legislature had been approved, and were certainly prima facie valid.

The opinion of the supreme court of North Dakota in the first case was filed on April 16, 1909, and the decision of the Supreme Court of the United States was filed on March 14, 1910. In the suit at bar plaintiff seeks to recover for overcharges up to that time, that is to say on shipments made from July 1st, 1907 to March 5, 1910.

In the subsequent and second case, which was started under the permission to reopen, evidence was confined to coal hauled, and to expenses of operation incurred from June 30, 1910, to June 30, 1911. None of the coal now under consideration was hauled during the period covered by the evidence in the second trial and embraced in the second decision of the Supreme Court of the United States.

How, then, can it be said that that court held the statute to be void from its inception and that the rates prescribed by the North Dakota legislature were confiscatory from July 1st, 1907, to March 5, 1910.

In the light of these views it follows that the judgment must be reversed and judgment entered for plaintiff for the sum prayed for in its complaint. It is so ordered.