[No. 17738. Department One. July 13, 1923.]

THE CITY OF EVERETT, *Appellant,* v. THE DEPARTMENT OF PUBLIC WORKS *et al., Respondents.*[1]

TELEGRAPHS AND TELEPHONES (5)—RATES—REGULATION—AUTHORITY OF DEPARTMENT OF PUBLIC WORKS—STATUTES. Under Rem. Comp. Stat., § 10391, conferring full jurisdiction of all regulatory matters concerning telegraphs and telephones upon the department of public works, and the recognized fact that all schedules of rates are experimental, or subject to be changed, the department, in order to determine. the reasonableness of rates for a metered telephone service, has power to authorize tests and prescribe experimental rates for stated periods until the further order of the department.

Appeal from a judgment of the superior court for Thurston county, Wilson, J., entered October 27, 1922, dismissing certiorari proceedings to review orders of the department of public works establishing telephone rates. Affirmed.

*R. J. Faussett, J. W. Dootson,* and *Lloyd L. Black,* for appellant.

*The Attorney General* and *Raymond W. Clifford, Assistant,* for respondent Department of Public Works.

*Tanner & Garvin,* for respondent Puget Sound Telephone Company.

MITCHELL, J.—In 1920, the Puget Sound Telephone Company, engaged in public service in Everett, upon petition to the then public service commission of the

[1] Reported in 217 Pac. 17.

state, now known as the department of public works, was authorized by the department to put into use in the city a limited number of instruments, called the telechronometer, for metered telephone service, without any charge being based thereon as such, as an experiment to test out that kind of service for the purpose of possible greater efficiency and economy of service as compared with the existing flat rate charges. The limited number of instruments was installed and kept under observation by the department, to whom reports were to be made from time to time. In June, 1921, the department, continuing the test, authorized the company to install generally other telechronometers, without changing the charges for that kind of service from the flat rates already prevailing. Sometime thereafter the telephone company made application to the department for an order approving a schedule of rates for metered service filed with the department. An order granting the application was entered on March 20, 1922, making the charges effective April 1 and continuing for sixty days and until the further order of the department, finding as a basis for the order that results thus far had demonstrated that the rates proposed were reductions to practically ninety per cent of the patrons of the city, and that, in order to determine the reasonableness of telephone rates for that kind of service, it was necessary that experiments based upon actual experience and charges be made. The rates were put into effect and an increasing number of the instruments were used.

On May 25, 1922, the department ordered the telephone company to amend its schedule so as to provide for a greater amount of service at the rates specified in the original schedule. This matter came on for hearing on June 2, 1922, and at the request of the city

the hearing was continued for final disposition until such time as a valuation of the property of the telephone company could be made. At the same time counsel for the city moved that, pending the final hearing, the telephone company should be required to return to the flat rate charges. It appears that at that time certain of the subscribers were not satisfied with the new service and charges. The motion to restore the flat rates was denied by the department on June 27, 1922, to which date the hearing had been continued, upon its finding that sufficient time had not been given for a proper test, that a reduction had occurred in the monthly charges in the case of a majority of the users, and that the total operating revenues collected by the company during the test period had been less than those collected under the flat rate basis. The order concluded with directions to the company to continue the present rates, rules, regulations and charges until the further order of the department. From this order of June 27, 1922, requiring a continuance of the rates in effect, a writ of review was sued out by the city of Everett, and thereafter, by an order of September 15, 1922, supplemented and corrected by an order of September 25, 1922, the department, upon the petition of a large number of the subscribers presented by the city of Everett, ordered a reestablishment of the former flat rates. It appears, however, that in the meantime some of the subscribers, having refused to pay the metered service charges, had allowed their telephones to be disconnected or removed, so that the order of the commission further provided that the telephone company, upon payment to it of all charges due at the time telephones were disconnected, and upon payment of the disconnect and reconnect charges, should restore service upon notice from the subscriber so to do.

After these final orders in September, the department made a return, including the September orders, to the writ of review and moved a dismissal of the proceedings in the superior court on the ground that the controversy had ceased. The motion was resisted by the city of Everett. The superior court, however, granted the motion and entered a judgment of dismissal, from which the city has appealed.

The assignments of error are general. It is to be kept in mind that no patron of the telephone company is here seeking reparation on account of a claimed illegal charge; also that there were no review proceedings of the schedule of rates for the metered service made effective April 1, 1922, nor of the order of the department of March 20, 1922, authorizing that schedule of rates; but the contention of the city is that the controversy has not wholly ceased because of the condition imposed upon those who wish to be reconnected for telephone service that they must pay charges for which they are in arrears, together with the cost of taking out and replacing the instruments—a condition which it is claimed has been improperly imposed for the reason that the whole proceeding relating to the test of the telechronometer, together with the schedule of rates and charges therefor, was without lawful authority and that the orders of the department were void.

It appears from the cases in the Public Utility Reports, cited in the briefs of counsel, that a number of the states have considered, and some of them in localities have adopted, the metered telephone service upon the initiative of the state authorities in pursuit of the problem to provide equipment suitable for the needs of a rapidly growing industry. The fact that in the present case the undertaking on the part of the company and the department was experimental in no way sug-

gests or proves a lack of authority. Even a schedule of rates, in the last analysis, is experimental, whether it is so denominated or not, for there can be no certainty of the amount of revenue it will produce until after a trial of it in actual operation. This fact has been repeatedly recognized by the courts. *Willcox v. Consolidated Gas Co.,* 212 U. S. 19, 53 L. Ed. 382; *Northern Pac. R. Co. v. North Dakota,* 216 U. S. 579, 54 L. Ed. 624; *Des Moines Gas Co. v. Des Moines,* 238 U. S. 153, 59 L. Ed. 1244; *Muskogee Gas & Elec. Co. v. State,* 81 Okl. 176, 186 Pac. 730. Manifestly, it is in recognition of this fact that the department of public works of this state is clothed with ample authority to change from time to time the schedule of rates of public service companies.

The reasoning which sustains the power of a regulatory body to prescribe an experimental rate is equally forceful and applicable upon the question of power to sanction and authorize the use of new equipment or methods. The theory of the rate cases is to permit a demonstration of the actual application of the proposed rates. It was so stated in the case of *Des Moines Gas Co. v. Des Moines, supra.* The same may be said of new equipment and methods, just as was done in the present case, else progress in this respect would be prohibited.

Without reviewing the authorities cited in the briefs, we are satisfied that there is ample authority found in the statute law of this state to warrant the course of the department in this case. Section 10391, Rem. Comp. Stat. [P. C. § 5582], confers full jurisdiction of all regulatory matters concerning telegraph and telephone companies upon the department, to be set in operation upon the motion of the department or upon complaint to it, and the section further provides that, whenever

the commission shall find, among other things, "that the equipment, facilities or service of any telegraph company or telephone company is inadequate, inefficient, improper or insufficient, the commission shall determine the just, reasonable, proper, adequate and efficient rules, regulations, practices, equipment, facilities and service to be thereafter installed, observed and used, and fix the same by order or rule as hereinafter provided."

Concluding that there was power in the department for the doing of the things complained of, the judgment appealed from is affirmed.

MAIN, C. J., HOLCOMB, BRIDGES, and MACKINTOSH, JJ., concur.