## STATE OF MISSOURI *v.* CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY.

#### MOTION TO STRIKE A DEFENSE FROM THE ANSWER.

No. 16, Original.   Argued May 2, 3, 1916.—Decided June 12, 1916.

In exerting the public rate-making power a State cannot, without violating the Federal Constitution, make the rates so low as to be confiscatory; and although the State may not be sued without its consent, an individual, even though he be a state officer, may be enjoined from doing an act violating the Federal Constitution.

From the power to fix railroad rates there results the duty to provide the opportunity of testing their repugnancy as a unit to the Constitution in case confiscation were charged.

In virtue of the due process provision of the Fourteenth Amendment, a State may not, by mandamus, compel a railroad to comply with rates fixed by a state law unless an opportunity is afforded to test the question of confiscation. *Chicago &c. Ry.* v. *Minnesota,* 134 U. S. 418.

This court has recognized the right of a railroad company to test the rates prescribed by a state statute as a unit and to obtain an injunction, restraining state officers from enforcing the law in its entirety, if it is found to be confiscatory.

The right to test a rate-making law as a unit is not exclusive of the right to test it by resisting in each particular case an individual effort to enforce a single rate prescribed.

The practice which has arisen of qualifying as " without prejudice" the decree in rate cases in which assertions of confiscation have not been upheld, and when the situation justified the qualification, is not so as to leave the controversy open as to the period dealt with by the decree, but so as not to prejudice property rights in the future, if from future operation and changed conditions confiscation in the future should result. *Knoxville* v. *Water Co.,* 212 U. S. 1.

The qualification of a decree dismissing a bill in a case brought by a railroad company to enjoin state officers from enforcing a rate statute as without prejudice, does not leave the matter open so that in a subsequent individual case brought by the State to recover excess fares paid during the period covered by the company's suit the defendant can attack the constitutionality of the law as a whole.

The fact that the State was not a party to the company's suit in which a decree dismissing the bill without prejudice was entered, and could not have been made a party without its consent, does not make such decree inapplicable in the individual suit of the State to recover excess fares paid during the period covered by the company's suit, and such defense should be struck from the answer.

*Quære,* whether a suit by a railroad company against state officers to enjoin enforcement of a rate-making statute is not a class suit binding upon all.

*Quære* as to the ultimate right to recover for excess rates paid pending a stay while the constitutionality of a rate-fixing statute was pending, in the absence of a condition to that effect imposed when the injunction was issued.

THE facts, which involve the construction and effect of the decision by this court in the *Missouri Rate Cases,* 230 U. S. 474, are stated in the opinion.

*Mr. John T. Barker,* Attorney General of the State of Missouri, with whom *Mr. Lee B. Ewing, Mr. W. T. Rutherford* and *Mr. Kenneth C. Sears* were on the brief, for complainant:

The injunction suit brought by defendant railroad in the District Court at Kansas City has been finally determined and the bill dismissed and injunction dissolved. Whatever money or property defendant received under or by virtue of such injunction or decree must be restored to complainant and defendant will not be heard to deny such right and cannot plead that such rates were confiscatory. Therefore such plea should be stricken out.

Where a carrier alleges a rate to be confiscatory it may litigate the question by enjoining the representatives of the State. It cannot litigate the question against individuals. This would be a collateral attack; and, as a direct method is provided, that method is exclusive. Numerous authorities support these contentions.

*Mr. O. M. Spencer* and *Mr. Frank Hagerman,* with whom *Mr. Chester W. Dawes* was on the brief, for defendant:

The motion erroneously assumes that the question of confiscation was here (230 U. S. 474) settled and upon its merits finally adjudicated.

If, as the answer alleges, the two-cent statutory fare requirement was confiscatory, then the complainant cannot recover, and any defense which so shows is, of course, proper.

Complainant erroneously seeks to have this court now decide this question: If an injunctive decree against the enforcement by state officers of the penal provisions of a state railroad statute fixing rates is entered, either on the merits or without prejudice, but subsequently set aside, are passengers, without more, entitled, as a common-law right, to sue for and recover any excess in rates collected while injunction was in force?

But even to such claim confiscation is a defense.

The first contention is that the State has a common-law right (if not superseded by a statute) arising out of a violation of a rate statute.

This common-law right of action for excess fares has, however, been superseded by exclusive penal remedies, which cannot and are not sought to be here enforced.

The rates upon which a recovery is attempted to be based were not those scheduled.

The liability,-if any, being only for statutory penalties, these were by the injunction proceedings put definitely, not contingently, in a state of legal suspense.

The next contention rests upon doctrine of restitution, which has no application, for that:

In contesting the validity of the rates the railroad company changed its status from a mere public-service corporation to a constitutional contestant of an alleged legislative attempt to take the property without due process of law and every act done by reason of the injunction or which thereby became permissible was, unless so secured, *damnum absque injuria*, so that it did not

legally cause any damage for which restitution is sought, damage legally caused being the sole basis of restitution.

Restitution cannot be asserted by one who was not a party to the suit, nor where the judgment was without prejudice to the merits, which the defendant now desires to litigate. Numerous authorities support these contentions.

*Mr. Ernest E. Watson, Mr. H. A. Abernethy, Mr. W. T. Alden, Mr. Campbell Cummings, Mr. H. L. McCune, Mr. F. W. Paschal and Mr. Clifford B. Allen,* by leave of the court, filed briefs as *amici curiæ.*

MR. CHIEF JUSTICE WHITE delivered the opinion of the court.

A preliminary outline is essential to clear the way for an understanding of the case. By original action here brought the State sues to recover a sum of money for passenger fares in excess of the rate established by law paid by its officers when traveling within the State on state business. Answering, the railroad alleges among other defenses that the rates fixed by law were so low as to be confiscatory and hence repugnant to the Constitution of the United States. The matter for decision arises on a motion on behalf of the State to strike out this defense on the ground that the right to assert it is barred by a decree of this court establishing that the rates fixed by the state law were lawful and not confiscatory,—a decree the conclusive effect of which, it is asserted, the railroad company is estopped from denying.

The case as made by the pleadings and by the record in which the decree relied on was rendered, of which we take judicial notice, is this: In April, 1905, by law Missouri established certain freight rates. Almost at once the defendant company and others filed their bills in

the Circuit Court of the United States for the Western District of Missouri against the State Board of Warehouse Commissioners, the Attorney General of the State and certain shippers alleged to be representative, to enjoin the carrying out of the rate-fixing law on the ground that to enforce the rates which it fixed would result in confiscation and a taking of the property of the railroads in violation of the Constitution. An injunction was granted prohibiting the carrying into effect of the rate law. While these suits were pending the State by law fixed a passenger rate and, repealing the freight law which had been enjoined, enacted another, and by supplemental bills both these laws were assailed on the grounds upon which the other law had been attacked and injunctions were awarded restraining their enforcement. After much testimony offered on the issue of confiscation, the court permanently enjoined the enforcement of the state statutes. On review in this court, as to the railroad now before us and others, this conclusion was held to be erroneous and the decree which was entered here reversed and remanded the case with directions to dismiss the bill without prejudice. *Missouri Rates Cases*, 230 U. S. 474, 509.

Although the contentions respectively pressed in argument are numerous, their solution depends upon the application of a few well settled principles which we proceed to state in order to test all the propositions by applying them and thus avoid redundancy.

1. In *Chicago &c. Railway Co.* v. *Minnesota*, 134 U. S. 418, considering a law fixing railroad rates in the light of two settled rules, (a) that in exerting the public rate-making power the rates cannot be made so low as to be confiscatory without violating the Constitution, and (b) that although a State is not subject to suit without its consent there is always the right to enjoin an individual, whether he is a state officer or not, from doing an act violating the Constitution, that is, from taking property

unlawfully, it was held that both these propositions controlled in the fullest degree in the legislative fixing of railroad rates. In fact it was in that case decided that from the act of fixing railroad rates by law there resulted the duty to provide an opportunity for testing their repugnancy as a unit to the Constitution in case there was a charge that they were confiscatory. It was accordingly held that in virtue of the due process of law provision of the Fourteenth Amendment the State could not by mandamus compel a railroad to comply with rates fixed by a state law unless an opportunity was afforded to test the question of confiscation.

Developing and applying this doctrine in many cases, it came to pass that on the complaint of a railroad as to the confiscatory character of rates fixed by state law, the right was recognized to test the rates as a unit and therefore to obtain an injunction restraining the enforcement of the state law in its entirety and that for such purpose any officers of the State having any power to directly enforce the law or by indirection to give effect to the same in any manner whatever were qualified as defendants to stand in judgment for the relief asked. *Reagan* v. *Farmers' Loan & Trust Co.*, 154 U. S. 362; *Smyth* v. *Ames*, 169 U. S. 466; *Ex parte Young*, 209 U. S. 123; *Willcox* v. *Consolidated Gas Co.*, 212 U. S. 19; *Minnesota Rate Cases*, 230 U. S. 352; *Missouri Rate Cases*, 230 U. S. 474; *Norfolk & Western Ry.* v. *West Virginia*, 236 U. S. 605.

2. While it is true that the comprehensive right thus recognized was broader and more efficacious than would be the right of a railroad merely to resist in each particular case an individual effort to enforce a single rate fixed by law (see *Ex parte Young*, 209 U. S. 123), it is true also that the recognized broader right was not, unless it was availed of, exclusive of the latter and narrower one, that is, the right to resist separate attempts to enforce a rate. *St. Louis & San Francisco Ry.* v. *Gill*, 156 U. S. 649. This

principle was but a recognition of the fact that the broader right to invoke a complete remedy to enjoin the law and thus prevent the enforcement of the rates, did not take away the narrower right of a railroad to stand upon the defensive and merely resist the attempt to enforce the rate in each particular case because of its confiscatory character. One right was not destructive of the other because there was freedom to elect which of the two would be pursued.

3. Resulting from the principles just stated, recognizing that the operation of a decree enjoining the giving effect to a rate law because of its alleged confiscatory character differed materially both as to the public interest and that of the railroad from the consequences which would arise from a mere decree rejecting the complaint of a person as to an individual and consummated grievance based on the claim that an illegal rate had been charged, it came to pass that a form of decree came to be applied in rate cases to meet and provide for this difference. In other words, in a rate case where an assertion of confiscation was not upheld because of the weakness of the facts supporting it, the practice came to be that the decree rejecting the claim and giving effect to the statute was, where it was deemed the situation justified it, qualified as "without prejudice", not to leave open the controversy as to the period with which the decree dealt and which it concluded, but in order not to prejudice rights of property in the future if from future operation and changed conditions arising in such future it resulted that there was confiscation. And the same limitation arising from a solicitude not to unduly restrain in the future the operation of the law came to be applied where the asserted confiscation was held to be established. In other words, the decree enjoining the enforcement of the statute in that case was also qualified as without prejudice to the enforcement of the statute in the future if a change in

conditions arose. The doctrine in the first aspect nowhere finds a more lucid statement than the one made on behalf of the court by Mr. Justice Moody in *Knoxville* v. *Knoxville Water Co.*, 212 U. S. 1. It has since been repeatedly applied in language which in the completest way makes the meaning of the limitation without prejudice in such a case clear and leaves no ground for any dispute whatever on the subject. *Willcox* v. *Consolidated Gas Co.*, 212 U. S. 19; *Northern Pacific Ry.* v. *North Dakota*, 216 U. S. 579; *Louisville* v. *Cumberland Tel. & Tel. Co.*, 225 U. S. 430; *Missouri Rate Cases*, 230 U. S. 474; *Des Moines Gas Co.* v. *Des Moines*, 238 U. S. 153. A complete illustration of the operation of the qualification is afforded by the *North Dakota Case*, just cited, since in that case as a result of the qualification "without prejudice" the case was subsequently re-opened and upon a consideration of new conditions arising in such future period a different result followed from that which had been previously reached. *Nor. Pac. Ry.* v. *North Dakota*, 236 U. S. 585. As to the second aspect, that is the significance of the limitation without prejudice as applied to a decree which enjoined the rates as confiscatory, the meaning of the reservation as we have stated it was in express terms through an abundance of precaution defined and stated in the opinion in the *Missouri Rate Cases*, 230 U. S. 474, 508.

Let us test the merit of the respective contentions by these propositions.

(a) It is insisted that the right obtains to assert as against the individual suit of the State the existence of the confiscation for the very period covered by the previous finding that there was a failure to establish the confiscation, because the reservation without prejudice which was made in that decree leaves the whole subject open for a renewed attack as to individuals and indeed by general complaint as to the unconstitutionality of the law as a whole. But this proposition simply disregards the founda-

tion upon which such a reservation came to be applied,
as we have just pointed out, in cases involving an assault
upon the present and future operation of a law fixing
rates.   In other words, the contention but accepts the
doctrine previously announced and yet repudiates the
cases by which that doctrine was established by affixing
a meaning to the reservation "without prejudice" as used
in the cases wholly destructive of the sole object and pur-
pose for which in those cases the reservation came to be
applied.   Again it is said, conceding that the limitation
without prejudice when applied to a rate case under
the authorities has the significance which we have affixed
to it, that meaning should only prevent the re-opening of
the inquiry as to the period embraced by the testimony
in the case and therefore should not be extended so as to
prevent the re-opening from the time at least of the close
of the testimony.   This, it is said, must be the case since
there might well be a change in conditions between the
time when the proof in a case was taken and the entry of
the final decree.   But this contention again disregards the
doctrine upon which, as we have pointed out, the reserva-
tion in rate-making cases came to be applied.   In other
words it treats the reservation without prejudice as looking
backward and overthrowing that which was concluded
by the decree instead of considering it in its true light,
that is, as looking forward to the future and providing for
conditions which might then arise.

(b) Conceding for the argument's sake the controlling
influence of what we have said, nevertheless the conten-
tion is that the previous decree is here inapplicable since
the State was not a party to the litigation in which the
decree was entered, indeed, could not have been made a
party without its consent.   But once more the argument
proceeds upon a disregard of the previous cases upon the
authority of which the right was exercised to obtain on
the charge of confiscation the exertion of judicial au-

thority to stay or suspend every vestige of power asserted
by the state statute fixing rates until the controversy
was determined. In other words, the proposition ignores
the doctrine settled by the previous cases that there in-
hered in, and went along with, the rate-making power a
duty on the part of the State to afford means for judicially
deciding a question of confiscation when asserted. It is
true, as we have previously pointed out, that because
there was a right on the part of a railroad to sue to pre-
vent the execution of the state power manifested in the
rate-making law, it did not follow that the railroad was
deprived of its right to resist the enforcement of the law
by way of defense when an attempt was made to enforce
the law against it. But it is true also, as we have seen,
that the right to elect between the two was undoubted,—
an election the potency of which was pointed out in the
*Gill Case, supra,* and was moreover in the clearest way
fully expounded in the *Young Case, supra,* p. 166. This
being true, it is obvious that the question here is not how
far the decree relied upon was binding upon parties who
were not technical defendants, but how far is it binding
upon the railroad. In other words, it is whether when
there has been an election to obtain a remedy by pro-
ceedings against particular defendants comprehensive
enough to restrain the giving effect of every vestige of
state power which was embraced in the authority exerted
by the State in passing the rate-making law, it can now
be said by the railroad in order to frustrate or limit the
decree rendered in the case that the restraint did not
operate as against the rate-making power so far as the
interest of the State is concerned because the State was
not a party. The right to restrain the whole power having
been enjoyed for the purpose of the complaint as to con-
fiscation which was made, the contrary cannot be asserted
in order to escape the effect of the decree holding that
such complaint was erroneously made. In last analysis

the contention comes simply to asserting that the settled rule of *Ex parte Young*, 209 U. S. 123, and the cases which preceded it was wrong and there was no right to restrain the complete enforcement of the rate law without the presence of the State as a technical party.   And the cogency of this consideration is made quite clear by bearing in mind as expressly pointed out in the *Young Case, supra*, p. 166, that the power which the court possessed by virtue of the bringing of the suit at the instance of the railroad to enjoin and suspend the whole rate-making law comprehensively included the right to stay proceedings brought in other courts which would have tended to set aside or frustrate the authority to completely exercise the jurisdiction acquired.

As it results from what we have said that in our opinion by the application of the most elementary principles of estoppel the railroad may not be heard to disavow what it asserted in order to secure the suspension of the rate law during the suit, it follows that it was without right in this case to assert the defense of confiscation and the motion to strike out the same must therefore prevail.

As the view which we have taken of the controversy has not rendered it necessary to consider whether in any event the suit was not a class suit binding upon all, into that subject we have not entered.   Additionally, we have not considered and express no opinion upon the arguments dealing with questions of the ultimate right to recover in the absence of a condition to that effect imposed when the injunction was issued, in view of the terms of the injunction bond, etc., etc.

> *The motion to strike out the defense of confiscation from the answer is granted.*

Mr. Justice McKenna dissents.